UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MICHELE L. CHAMBERLIN,

                      Plaintiff,

     v.                                              **DECISION AND ORDER**
                                                       14-CV-1073S

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY,

                      Defendant.

       1.      Plaintiff Michele L. Chamberlin challenges an Administrative Law Judge's ("ALJ") determination that she is not disabled within the meaning of the Social Security Act ("the Act"). Plaintiff alleges that she has been disabled since March 1, 2011, due to, *inter alia*, back and joint pain, uncontrolled diabetes, irritable bowel syndrome, depression, and asthma. (R. at 112, 130). Plaintiff contends that her impairments render her unable to work. She therefore asserts that she is entitled to payment of disability benefits under the Act.

       2.      Plaintiff filed an application for supplemental security income on June 4, 2012. The Commissioner denied her application for benefits on September 5, 2012. On September 18, 2012, Plaintiff timely filed a written request for hearing. Thereafter, ALJ Jerome Hornblass held a video hearing on July 17, 2013. The ALJ considered the case *de novo* and determined on August 7, 2013, that Plaintiff was not disabled under the Act. On October 29, 2014, the Appeals Council denied Plaintiff's request for review. Plaintiff filed the current action challenging the ALJ's decision on December 22, 2014.[1]

---

[1] The ALJ's August 7, 2013 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

1

3.      On June 1, 2015, Plaintiff filed a Motion for Judgment on the Pleadings, seeking reversal of the Commissioner's final decision.  (Docket No. 10).  On July 31, 2015, Defendant filed her own Motion for Judgment on the Pleadings, asking this Court to affirm her decision.  (Docket No. 11).  After full briefing, this Court took the motions under advisement without oral argument.  For the following reasons, Defendant's motion is granted and Plaintiff's motion is denied.

4.      A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); see also Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is evidence that amounts to "more than a mere scintilla."  Richardson v. Perales, 402 U.S. 389, 401 (1971).  The term substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id. (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5.      "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams on Behalf of Williams v.

Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

      6.    The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act.  See 20 C.F.R. §§ 404.1520, 416.920.  The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

      7.    This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the

>claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8.  While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; see also Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); see also Heckler v. Campbell, 461 U.S. 458, 460 (1983).

9.  Here, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity since June 4, 2012, the date she filed her application for disability benefits (R. at 13);[2] (2) Plaintiff's "severe impairments" include diabetes mellitus (type II) and a history of diabetic peripheral neuropathy, arthralgia, osteoporosis, degenerative joint disease, and asthma (Id.); (3) Plaintiff's impairments do not meet or medically equal the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (R. at 14); (4) Plaintiff has the residual functional capacity to perform sedentary work, as defined in

---

[2] Citations to the underlying administrative record are designated as "R."

20 C.F.R. 416.967(a) (R. at 14); (5) Plaintiff is capable of performing her past work as a customer service representative, (R. at 18).

Despite the determination that Plaintiff is capable of performing her past work, the ALJ also made alternative findings at Step Five.  The ALJ determined that, considering Plaintiff's age, education, work experience, and residual functional capacity, there are other jobs that exist in the national economy that Plaintiff can also perform. (R. at 19).  Ultimately, the ALJ determined that Plaintiff was not disabled, as defined by the Act, since the filing date of her application for supplemental security income.  (R. at 20).

10. Plaintiff first challenges the ALJ's residual functional capacity finding. Specifically, Plaintiff argues that the ALJ failed to properly consider the opinions of Consultative Examiner Dr. Baskin, PA Merstock, and Dr. Li, resulting in the RFC finding being unsupported by substantial evidence in the record.  But having reviewed the ALJ's decision in light of Plaintiff's argument, this Court finds no error.  Rather, the ALJ's decision contains an adequate discussion regarding the findings of Dr. Baskin, PA Merstock, and Dr. Li.

11. Plaintiff argues that the ALJ failed to consider Dr. Baskin's finding that Plaintiff has moderate limitations in dealing with stress.  Relying on Sweat v. Astrue, Plaintiff contends that this failure requires remand.  No. 08-CV-1108, 2011 WL 2532932, at *6-7 (N.D.N.Y. May 23, 2011).  In Sweat, two consultative psychiatric examiners determined that the plaintiff suffered from anxiety and depression.  Id. at *6. One examiner noted that the plaintiff had "'difficulties relating with others and dealing with stress,'" while the other opined that the plaintiff "'may have difficulty maintaining a

regular schedule'" and difficulty "'dealing appropriately with stress.'"  Id.  There, the ALJ noted the consultative examiners' findings that Plaintiff would have difficulty dealing with stress, but failed to explain how those findings reconciled with his RFC assessment.  As such, the district court found the ALJ's failure to be grounds for a remand.  Id. at 7.  Sweat, however, is distinguishable.

12.    First, contrary to Plaintiff's argument, the ALJ addressed her ability to deal with stress.  The ALJ discussed Dr. Putnam's records, which consistently indicated that Plaintiff was at times anxious, but "[n]ot depressed or in acute distress."  (R. at 211-220, 288-320, 344-366).  The ALJ also acknowledged Dr. Baskin's opinion that Plaintiff would have moderate limitations being able to deal with stress. (R. at 225).  The ALJ then found these opinions consistent, reasoning that Dr. Baskin's opinion comports with Dr. Putnam's clinical records, "which indicate that [Plaintiff] consistently had normal mental status examinations, including normal mood and appropriate affect, and did not have emotional problems."  (R. at 14).  Further, the ALJ noted Dr. Baskin's findings that Plaintiff "had a fully normal mental status examination, including euthymic mood, full range and appropriate affect, coherent and goal directed thought process, intact attention/concentration, and intact recent and remote memory skills."  Id.  While Plaintiff faults the ALJ for not incorporating a stress limitation in her RFC, Dr. Baskin's opinion does not require one, since she found only minimal to no limitations on Plaintiff's ability to perform work-related functions.  (R. at 224).  Thus, the ALJ appropriately considered Dr. Baskin's opinion.

Second, unlike the *difficulties* dealing with stress experienced by the plaintiff in Sweat, Plaintiff has only "moderate limitations dealing with stress but minimal to no

6

limitations performing work-related functions associated with simple or complex tasks," as found by the ALJ. (R. at 13). Sweat, therefore, does not require remand in this case.

13. As to PA Merstock and Dr. Li, Plaintiff argues that the ALJ failed to consider their records and opinion that her tremors are a result of her stress or anxiety. Merstock found that Plaintiff suffered from depression. (R. at 323). But Merstock's records also indicate that, after the psychiatric portion of Plaintiff's physical exam, her judgment and insight, mental status (including orientation to time, place, and person), and her memory were all normal. Id.

Although Dr. Li opined that Plaintiff's tremors were "most likely the [sic] anxiety or stress related," he also noted that the kinetic tremor in her right hand was "minimal" and there was "no need to treat." (R. at 271). As to Plaintiff's mental status, Dr. Li found that she "is not in distress, and is fully alert and oriented to time, place, and person. [Plaintiff] has a good fund of knowledge and knows current events. Attention span is adequate. Recent and remote memories are well maintained." Id. These records and observations are consistent with the ALJ's RFC determination.

The ALJ made his RFC finding after he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (R. at 14). "Although required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." Craig v. Apfel, 212 F.3d 433, 436 (2d Cir. 2000) (citing Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998)).

14. "When, as here, the evidence of record permits [the Court] to glean the rationale of an ALJ's decision, [the Court does not] require that he […] have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983); see also Berry v. Schweiker, 675 F.2d 464, 469 (2d Cir. 1982) (noting remand was unwarranted where there are other portions of the ALJ's decision and clearly credible evidence available in finding that his determination was supported by substantial evidence). In this Court's view, the ALJ adequately considered and discussed the opinions and evidence from Dr. Baskin, PA Merstock, and Dr. Li. This evidence constitutes substantial evidence supporting the ALJ's decision. This Court therefore finds no reversible error with respect to this aspect of the ALJ's decision.

15. Plaintiff's next challenge to the ALJ's decision is that the ALJ's credibility determination is based on conjecture and factual inaccuracies. Specifically, Plaintiff argues that the ALJ erred in evaluating her testimony about the limiting effects of her impairments, which resulted in an adverse credibility finding. Plaintiff's argument is unpersuasive.

16. Credibility determinations are generally reserved to the Commissioner, not the reviewing court. See Aponte v. Sec'y of Health and Human Svcs., 728 F.2d 588, 591 (2d Cir. 1984) (holding that it is the job of the Commissioner and not the reviewing court to make determinations on the credibility of witnesses); see also Carrol v. Sec'y of Health and Human Svcs., 705 F.2d 638, 642 (2d Cir. 1982). Where there is conflicting evidence about a claimant's pain, the ALJ must make credibility findings. See Snell v.

Apfel, 177 F.3d 128, 135 (2d Cir. 1999).  The Commissioner has established a two-step process to evaluate a claimant's testimony regarding his or her symptoms:

> First, the ALJ must consider whether the claimant has a medically determinable impairment which could reasonably be expected to produce the pain or symptoms alleged by the claimant. Second, if the ALJ determines that the claimant is impaired, he then must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms. If the claimant's statements about his symptoms are not substantiated by objective medical evidence, the ALJ must make a finding as to the claimant's credibility.

Matejka v. Barnhart, 386 F. Supp. 2d 198, 205 (W.D.N.Y. 2005); see also 20 C.F.R. § 404.1529.

17.     Here, the ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms.  (R. at 17). But because of objective medical evidence that conflicts with Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms, the ALJ determined that Plaintiff's statements were not credible.  Id.  In making his determination, the ALJ considered factors enumerated in 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3), and SRR 09-7p.  Id.  Those factors include information that Plaintiff or others provided about Plaintiff's pain or symptoms, what may have precipitated or aggravated those symptoms, medications or other methods to alleviate the symptoms, and how the symptoms may affect Plaintiff's pattern of daily living.  See 20 C.F.R. 404.1529(c)(3).

18.     This Court finds no error in the ALJ's assessment of Plaintiff's credibility. Despite Plaintiff's complaints of chronic aches and pains throughout her body, the ALJ found no "clinical correlation of joint swelling, instability, or atrophy, or diagnostic evidence of significant degenerative or inflammatory disease." (R. at 17).  As to

9

Plaintiff's complaints of knee instability and loss of balance, the ALJ determined that these complaints "are not supported by objective clinical or diagnostic evidence and, in any event, appear to have resolved within a few months." Id.

The ALJ acknowledged Plaintiff's mental impairments but found "no evidence of significant symptoms, vegetative depression, panic attacks, a thought disorder, or any objective evidence of impaired attention/concentration or memory." Id. Moreover, the ALJ relied on the facts that Plaintiff "has been treated conservatively and is stable on medication;" "does not receive mental health treatment other than medication prescribed by her primary care physician;" "has not had or been advised to have surgery for any of her physical impairments;" nor has she "required emergency room treatment or hospitalization for any of her impairments." Id. These observations support the ALJ's credibility assessment.

19. The ALJ was further dissuaded by Plaintiff's self-described daily living activities. Not only is Plaintiff independent in her own personal care, she also cares for her disabled husband, her six-year-old stepson, and her two young grandchildren, ages four and five years. Id. Plaintiff does household chores including cooking, cleaning, and laundry. Id. Notwithstanding her complaints of severe pain, Plaintiff also can and does drive a car and enjoys playing computer games. Id. Lastly, the ALJ found the evidence to suggest that Plaintiff's "unemployment is due to household and childcare responsibilities rather than inability to perform work." (R. at 18). Although Plaintiff strenuously objects to this conclusion, there nonetheless exists evidence in the record to support it.

20. An ALJ "may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" Lewis v. Apfel, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting Gallardo v. Apfel, No. 96 CIV 9435, 1999 WL 185253, at *5 (S.D.N.Y. Mar. 25, 1999)).  This Court's review of the ALJ's determination in light of the record as a whole reveals that the ALJ's credibility assessment was performed in accordance with this guidance.

21. The ALJ conducted a thorough examination of the treatment records, treating source opinions, and other medical evidence.  But Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not in accord with the record.  This Court is satisfied that the ALJ applied the proper legal standards in his credibility analysis and that there is substantial evidence to support the ALJ's determination that Plaintiff's impairments do not "preclude her from performing working on a sustained basis."  (R. at 18).  Accordingly, Plaintiff is not entitled to reversal or remand on this ground.

22. Finally, Plaintiff contends that the ALJ erred by applying the Medical Vocational Guidelines to Plaintiff's RFC assessment.  In determining whether a successful adjustment to other work can be made, the ALJ considered Plaintiff's RFC, age, education, and work experience in combination with the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2.  (R. at 19).  "[I]f the ALJ concludes that Plaintiff's stress levels do not significantly diminish [her] work capacity beyond that caused by [her] exertional impairments, it is appropriate for the ALJ to

solely apply the Grids." Booker v. Colvin, No. 14-CV-407S 2015 WL 4603958, at *4 (W.D.N.Y. July 30, 2015). In accordance with Medical-Vocational Rules 201-28 and 201.21, the ALJ returned a finding of "not disabled," because Plaintiff has the residual functional capacity to perform the full range of sedentary work. (R. at 19). Moreover, the ALJ found, in accordance with SSRs 83-12 and 83-14, that the additional limitation that Plaintiff work in an environment free of concentrated exposure to known respiratory irritants had little or no effect on the occupational base of unskilled sedentary work. Id. Thus, this Court finds that the ALJ did not err in his finding of "not disabled" under the framework of these applicable rules.

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 11) is GRANTED.

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 10) is DENIED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.

Dated: July 15, 2016
       Buffalo, New York

                                            /s/William M. Skretny
                                            WILLIAM M. SKRETNY
                                            United States District Court Judge